UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID CARTER,

                 Plaintiff,

       -v-                                12-CV-9087-LTS-AJP

NY STATE C.O. J. CARROLL,

                 Defendant.

_____

## MEMORANDUM ORDER

       This action was brought by incarcerated pro se plaintiff David Carter ("Carter")

against New York State Corrections Officer James Carroll ("Carroll") pursuant to 42 U.S.C.

§ 1983.  Plaintiff alleges that Carroll used excessive force in violation of Carter's constitutional

rights.  Carroll moved for summary judgment and, on December, 17, 2013, the Court granted

Carroll's motion and dismissed the case because Carter had failed to exhaust his adminsitrative

remedies before filing suit in federal court.  See 42 U.S.C. § 1997e(a).  Carter now moves for

reconsideration under Local Civil Rule 6.3 and for relief from the Court's judgment under Rule

60(b) of the Federal Rules of Civil Procedure.  Carter has also appealed the dismissal of the

action to the Second Circuit.[1]

       The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.  The Court

has considered carefully the parties' submissions and arguments.  For the following reasons,

---

[1]       Carter's motion for reconsideration contains a handwritten date of December 23,
2013 and was date-stamped January 2, 2014 by the Clerk's Office (docket entry
no. 75).  Carter's notice of appeal contains a handwritten date of December 23,
2013 and was date-stamped January 7, 2013 by the Clerk's Office (docket entry
no. 76).  The Second Circuit has issued an order staying the appeal pending
resolution of Carter's motions (docket entry no. 84).

Carter's motion for reconsideration is granted and his motion for relief from the judgment dismissing his complaint is granted.

<u>BACKGROUND</u>

Carter alleges that, on December 6, 2012, Carroll struck him repeatedly with a wooden baton while breaking up a fight between Carter and another inmate (Wen Decl. Exhibit C; Def.'s L.R. 56.1 Statement at ¶¶ 12–13) and that Carroll continued to strike him after Carter and the other inmate had been separated (Carter Dep. at 53).[2]  Carter also alleges that, when he spoke to area supervisor Sergeant Cipollini shortly after the incident, Cipollini said that he would "break [Carter's] neck" and "falsely charge [him] with assault on staff."  (Pl.'s Mem. Opp'n Summ. J. 1.)  Carter did not file an administrative grievance after the incident.  Rather, he commenced this lawsuit three days after the incident. (Docket entry no. 1.[3])  Carter did not initiate administrative grievance proceedings thereafter, although he did write to the superintendent of the facility to complain of the incident.  It is undisputed that Carter was familiar with the grievance system for inmates.  Carter asserted, in response to the original summary judgment motion practice, that he did not file a grievance because he feared retaliation by Sergeant Cipollini.

In his submissions in connection with the instant motion practice, he reiterates this contention, proffering further details regarding the circumstances of his confinement following the December 6, 2012, incident and his own state of mind.  Specifically, he alleges that he was held in Special Housing Unit ('SHU') confinement for 28 days following the

---

[2]     The details of Carter's allegations regarding the incident are recited in the Court's December 17, 2013, Memorandum Order, familiarity with which is presumed.

[3]     Carter's complaint bears a handwritten date of December 9, 2012, and a December 12, 2012, date stamp from the Clerk's Office.

incident in an area of the prison facility that was only a short distance from the area in which

Carroll and Cipollini worked.  He further alleges that Carroll followed and "stalked" Plaintiff in

the area of  his SHU cell approximately two weeks after the original incident, after a disciplinary

hearing at which Plaintiff had requested that Carroll be interrogated.  Plaintiff proffers that he

has a history of paranoid schizophrenia and asserts that he did not grieve the incident out of fear

of retaliation by Cipollini, either in the form of further physical assault or in the form of a false

incident report that could result in an order subjecting Plaintiff to further confinement.[4]

According to Plaintiff, he was returned to the area in which Carroll worked after his 28 days in

SHU, and was not transferred to the Great Meadows prison facility until 70 days after the

incident, by which time the administrative deadline for filing a grievance had run.  He asserts

that he raised the question of filing a grievance with "the law library officer at Great Meadow

and his remarks were 'you are plainly out of luck.'"

<u>DISCUSSION</u>

After careful consideration of the parties' original submissions, the Court granted

Carroll's motion for summary judgment in its December 17, 2013, Memorandum Order

("December 17 Order").  Citing the Prison Litigation Reform Act's ("PLRA") requirement that

inmates exhaust all administrative remedies before seeking relief in court,  42 U.S.C. § 1997e(a),

the Court found that Carter had been aware of the administrative procedures and that he had not

taken "any steps to file a grievance while he was at Downstate, or while he was held in the SHU,

---

[4]     Plaintiff has also submitted a copy of an order entered by Chief Judge Preska granting
Rule 60 relief permitting him to reinstate a complaint in a separate case that he had
previously withdrawn, reinstated and withdrawn again.  Chief Judge Preska found
Plaintiff's actions in that case consistent with his claims of fear of retaliation. (See <u>Carter
v. John Doe 1</u>, 12-CV-9278-LAP, docket entry no. 14.)  That case was later dismissed
after Plaintiff failed to amend his complaint as directed by the Court.  <u>Id.</u>, docket entry
no. 16.

or later, after he had been transferred to Great Meadow Correctional Facility ('Great Meadow')."

December 17 Order at 3.  Treating Carter's allegations of Cipollini's statements as true, the

Court found that Cipollini's statements were not sufficiently linked to Carter's failure to comply

with the grievance procedures "to have rendered the grievance process, of which Carter

acknowledges he was aware, unavailable to him, or to any similarly situated individual."  Id. at

5.

      "A motion for reconsideration is an extraordinary remedy to be employed

sparingly in the interests of finality and conservation of scarce judicial resources."  Drapkin v.

Mafco Consol. Group, Inc., 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011).  A motion for

reconsideration will be denied unless the movant can demonstrate "an intervening change of

controlling law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice."  Doe v. NYC Dep't of Soc. Servs., 709 F.2d 782, 789 (2d Cir. 1983)

(internal citation and quotations omitted).  Under Rule 60(b) of the Federal Rules of Civil

Procedure, "the court may relieve a party or its legal representative from a final judgment, order,

or proceeding" for a number of reasons, including "any . . . reason that justifies relief."

      The Court has considered carefully all of Carter's submissions, his arguments,

and the defense's submission.  Carter offers for the first time factual allegations about the SHU's

proximity to the area in which Carter and Cipollini worked.  He also alleges that the officers'

access to the SHU deterred him from filing a grievance during the period allotted to him.

Finally, Carter also alleges that he suffers from paranoid schizophrenia which, he asserts,

contributed to his fear of retaliation.

      In light of Plaintiff's pro se status and his allegations regarding his mental

condition, the Court has reconsidered, on the supplemented record, the question of whether

Plaintiff has proffered facts sufficient, when viewed in the light most favorable to him, to demonstrate that he was subjected to threats or intimidation sufficient to render the ordinary grievance procedures unavailable to him. (See December 17, 2013, Memorandum Order at 4-5.) The Court finds that Plaintiff's proffers, which supplement his assertions in his pro se complaint and in his deposition testimony that he did not pursue the administrative grievance process at Downstate because he feared physical or procedural retaliation by Sergeant Cipollini, are sufficient to raise a genuine issue of fact as to whether special circumstances existed that effectively made the grievance process unavailable to him at Downstate.  His proffer regarding his effort to initiate the process at Great Meadows is sufficient to address the question of availability of the process after his transfer.  Accordingly, upon reconsideration, Plaintiff is granted Rule 60(b) relief in the interests of justice and the Court directs the Clerk to vacate the judgment dismissing the case and the order granting Defendant's motion for summary judgment.

CONCLUSION

For the foregoing reasons, Carter's motion for reconsideration and his motion for relief from judgment are granted.  This Memorandum Order resolves docket entries 75 and 89.

The parties are directed to meet promptly with Magistrate Judge Peck for settlement purposes and are reminded that they have the option of consenting to a trial before Judge Peck.  Defense counsel must contact the Court to schedule a final pretrial conference if the parties anticipate that the case will go to trial before Judge Swain.

SO ORDERED.

Dated: New York, New York
        September 8, 2014

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        United States District Judge

Copies mailed to:

David Carter
12-A-5083
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929